## No. 11,386.

REMINGTON PAPER COMPANY VS. JOHN W. WATSON ET AL.

If the propositions of law be as they are stated in the plaintiff's petition, and the facts are to be treated and considered as they are alleged therein, the defendant's exception of no cause of action ought not to be maintained—the authority of the appointed receiver who contests the plaintiff's seizure, both in law and fact, being repudiated and disavowed; and also alleged to have been obtained by collusion, for the purpose of defrauding creditors.

APPEAL from the Civil District Court, Parish of Orleans. *Ellis, J.*

*Merrick & Merrick* for Plaintiff and Appellant:

A mere *ex parte* order appointing a receiver to an existing corporation, against which no process is either prayed for or served, and no affidavit, proof or evidence offered, is absolutely null and void. Third persons are not bound by such orders, especially when not complied with. Ober *et al.* vs. Manufacturing Co., 44 An. 570, 571, 573 and 574; State *ex rel.* Britton vs. City, 43 An. 832; Martin vs. Blanchin, 16 An. 238; Frazier, Receiver, vs. Wilcox, 4 Rob. 523, 525; 24 An. 348, 399.

"There can be no greater nullity than a judgment without parties defendants." Labauve vs. Slack, 31 An. 141, top of page.

The term "receiver" has no settled or definite meaning in our law, like sheriff, judicial sequestrator, administrator, tutor or the like, or receiver in chancery, where his functions are explained in many volumes. The Louisiana receiver is but an agent of the parties. 2 Rob. 151, 154; 4 Rob. 517; 12 An. 299, top of page.

It is only to defunct corporations that his duties assimilate a chancery receiver. 44 An. 570.

No judge has been entrusted with the dangerous power by an *ex parte* order to transfer the right of possession or property from an existing corporation to third persons.

Nor to forfeit the charter of such corporation, nor to screen such property from the pursuit of creditors. The richest corporation would be unsafe with such power in any man's hand.

It is the right of every one receiving injury from such illegal proceedings to have them declared null. The State courts are as

much bound to redress wrongs to constitutional rights as they are injuries to any other rights. R. C. C. 2315; 8 Rob. 428; 12 Rob. 20; 42 An. 194; 9 Rob. 191.

*Henry L. Garland, Jr.*, Attorney for Appellees:

The issues on appeal will be restricted to those raised in the judgment appealed from.

Collateral issues raised or decided in other judgments, from which no appeal is taken, will not be considered. Thus, where an order appointing a receiver is rendered, to which consent is given by the plaintiff in the suit, by the defendant corporation, by the State through the Attorney General, and by a large majority of stockholders, and where no stockholder dissents, and where subsequently a mere creditor, not a stockholder, files an action for damages against the receiver and others to which is tacked on a demand for the rescinding of the order appointing the receiver (from which no appeal is taken), the validity of the order appointing the receiver will not be considered on an appeal taken solely from the judgment dismissing the suit for damages and for nullity of the judgment appointing the receiver. Appellate issues are confined to the judgment appealed. 34 An. 3; 34 An. 1025, 1236; 35 An. 555, 1178; 31 An. 436, 521, 741; 33 An. 1404; 30 An. 1255; 14 An. 49; 41 An. 465, 904; 42 An. 77, 346; 35 An. 318; 17 An. 126, 714.

An action of nullity of judgment will not lie where such nullity, if it exists, may be declared on appeal. 3 An. 646; 22 An. 371; 14 An. 666; 27 An. 36; 6 An. 799; 9 An. 203; 23 An. 146.

Where a court of competent jurisdiction appoints a receiver, his acts as such are valid pending his appointment, and will not subject him personally to an action of damages at the suit of an alleged creditor of the corporation.

Where a receiver is appointed to a corporation by a court of competent jurisdiction at the suit of a creditor; in which the State and a large majority of the stockholders intervene and pray for the confirmation of such appointment, and where the corporation itself through its president and board of directors consents to such appointment, the order appointing the receiver can not be annulled at the suit of a single dissenting creditor.

In proper cases, where a great emergency exists, courts have power to appoint *ex parte* receivers to corporations whose property is abandoned and in a danger of ruin, unless immediately protected. The *ex parte* nature of the decree might possibly be complained of by the corporation or stoccholders—but certainly not by a mere creditor.

A creditor has no interest to resist the forfeiture of the charter of a corporation or demand that it continue in business. His interest is in its property. Where his suit is not predicated on any allegation of waste, ruin or erroneous charges by reason of the receivership, the judgment dismissing it as disclosing no cause of action will be affirmed.

The opinion of the court was delivered by

WATKINS, J. This is an action of nullity, accompanied with a demand for damages, which was, upon the exceptions of the defendants, dismissed, because it stated no cause of action, and from this judgment of dismissal the plaintiff has appealed.

Whether a petition has, or not, stated a cause of action must be ascertained and determined from examination and analysis of the petition itself, and the test is, whether if all the allegations be taken as true—for the purposes of the exception—the petitioner would be entitled to judgment.

The substantial averments of plaintiff's petition are:

That it—the Remington Paper Company—is a corporation created under the laws of New York, and having a just claim against the Lonisiana Printing and Publishing Company, Limited, amounting to three thousand eight hundred and sixty dollars and fifty-five cents, for paper furnished said company, and *on* such paper as remained on hand; and having a vendor's lien and privilege thereon, it has a right to sue in the United States Circuit Court and obtain writs of sequestration and attachment against the property and assets of said company.

That, in pursuance of said claim and right, said Remington Paper Company did file suit in the United States Circuit Court, on the 29th of May, 1893, and, under writs of sequestration and attachment therein issued, caused said property to be sequestered and attached —said property consisting of printing press, safe and other articles

of furniture, etc.—and to be taken into custody by the marshal of the United States.

That service of said suit was made on J. D. Hill, president of the defendant company, on the date of the filing thereof, and that, under the Constitution and laws of the United States, petitioner is entitled to prosecute said suit to effect without let or hindrance on the part of any person.

That, "nevertheless, John W. Watson, now made defendant in this suit, in violation of said petitioner's rights, falsely styling himself a receiver of the said printing and publishing company, and falsely stating that he was in possession of said property attached and sequestered, in virtue of an appointment as such receiver * * * filed on the 30th of May last (1893), in said Circuit Court, a motion to have the said attachment and sequestration set aside; and said motion coming on for trial, the said Circuit Court, without passing on the force of the proceedings (of the Civil District Court) on the 6th day of May, ordered that the marshal restore the property seized in (said) cause, under the writs of attachment and sequestration (to) said John W. Watson, receiver, unless within five days the plaintiff applies for and ultimately receives authority from the Civil District Court, which appointed Watson, or from the appellate court, to hold same under said writ."

That the aforesaid order will have the effect of preventing his obtaining a judgment against said defendant, as there is no mode of revising said order until final judgment can be rendered in said cause without occasioning petitioner great loss and injury, say in the sum of three thousand eight hundred and sixty-three dollars and fifty-five cents, and endangering the loss of its said debt of three thousand eight hundred and sixty-three dollars and fifty-five cents, for which amount petitioner alleges the defendant, Watson, liable.

That said Watson was without any legal right to stand in the way of the collection of its just claim against the defendant for the following reasons, viz. :

1. That at the date of its seizure aforesaid he had not given bond, "nor had he complied with the order of court in the said *ex parte* proceedings; nor had such proceedings been had as to perfect said order, or to give said Watson any right to control the property of said defendant, or to prevent any suit from being brought, or any court from subjecting the property of said defendant by due course of law to the payment of its debts."

2. That "the conduct of said Watson, Frank H. Pope, and those confederating with them, in attempting to screen the property from payment of debts, was collusive and a constructive fraud upon petitioner, and a violation of its rights under the laws and Constitution of the United States."

3. That "the said pretended order under which said John W. Watson claims pretended authority, dated 17th of May, 1893, was absolutely null and void as against petitioner, and the creditors of the said Louisiana Printing and Publishing Company, Limited, and conferred no authority on Watson, for the reason that the same was made upon the collusive petition of Frank H. Pope without citation to any one; without oath or affidavit, or any proof, and without any *contestatio litis;* and that the said inchoate and pretended order on said Pope's petition was obtained (on) the same day said Pope's collusive petition was filed, and in which no citation was prayed for."

4. That "the officers of the Louisiana Printing and Publishing Company, Limited, were incapable by the law of withdrawing from their offices, so as to delay or hinder the creditors of said corporation from the pursuit of creditors; and the said corporation does not cease to exist until regular proceedings have been taken against the numerous officers and stockholders of said corporation, or otherwise, under its charter."

5. That "the attempt to bolster up the illegal and *ex parte* proceedings by so-called interventions on the part of the Attorney General will not cure the nullity of said *ex parte* proceeding of said Pope and said Watson; and, moreover, said so-called intervention, which contains no affirmative allegations on behalf of the State, but purports to recite Pope's allegations, is not a mode of proceeding authorized by law, and the State is without right to intrude itself in this manner into controversies of private persons and to demand forfeitures in any other manner than that provided by law; and the Attorney General was without authority to join said Pope in his prayer in said *ex parte* petition * * and pray that a receiver be appointed; and said *ex parte* proceeding is null and void as against creditors not parties in pursuit of their rights."

In conformity to the preceding averments petitioner prayed, amongst other things, "that said *ex parte* order purporting to appoint said John W. Watson receiver be declared, as against your

petitioner, null and void and of no effect, and that same is ineffect-ual as a bar to said attachment and sequestration, or other proceed-ings on the part of petitioners in the said court of the United States; and that said John W. Watson and said Frank H. Pope be condemned *in solido*, or otherwise to pay your petitioner the sum of three thou-sand eight hundred and sixty-three dollars and fifty-five cents damages caused by their illegal interference with petitioner's pro-ceedings" as above recited.

It is not readily perceived on what theory the defendant's plea of no cause of action rests, or on what theory the judge *a quo* maintained said exception and dismissed the plaintiff's suit.

It is evident that this suit has for object the removal of the receiver, so as to leave the course of proceedings in the United States Circuit Court untrammeled and free; and if, in point of law and fact, his petition be taken as true, he is undoubtedly entitled to judgment.

The opinion of the district judge—as is usually the case with his opinions—is forcibly and carefully stated, though it bears with more direct reference upon the merits of the cause than upon the excep-tion.

We can not anticipate what will be the opinion of this court on the various abstruse and difficult propositions of law propounded in plaintiff's petition; nor can we possibly divine what will be the character, or the degree of sufficiency of the evidence the plaintiff may bring to the support of its representations of fact; but if the law be as the plaintiff asserts it to be, and the facts are to be treated and considered as stated, it is difficult to resist the conclusion that the plaintiff is entitled to judgment.

The judgment appealed from must be reversed. It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that the ex-ception of no cause of action be overruled, and the cause be rein-stated and remanded to the lower court for trial, at the cost of de-fendants and appellees, in both courts—*quoad* said exceptions.